CLARA M. FERNER, EXECUTRIX OF THE ESTATE OF ROY Y. FERNER
*v.* UNITED STATES (No. 3833)[1]

United States Court of Customs and Patent Appeals, May 27, 1935

*Tompkins & Tompkins (J. Stuart Tompkins* of counsel) for appellant.

*Joseph R. Jackson,* Assistant Attorney General *(Charles D. Lawrence,* Special Assistant to the Attorney General, and *Daniel I. Auster,* special attorney, of counsel), for the United States.

[Oral argument April 15, 1935, by Mr. J. Stuart Tompkins and Mr. Lawrence]

Before BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges; GRAHAM, Presiding Judge, not participating.

BLAND, Judge, delivered the opinion of the court:

After appeal here, the death of Roy Y. Ferner, the importer of the merchandise involved, having been suggested to the court, and other pertinent facts having been shown, Clara M. Ferner, the executrix of the estate of Roy Y. Ferner, was substituted as appellant in the place and stead of said Roy Y. Ferner.

The instant appeal is from the judgment of the United States Customs Court, First Division, which overruled importer's protests and sustained the collector's classification and assessment with duty at 60 per centum ad valorem of certain imported measuring machines

---

[1] T. D. 47735.

more particularly described hereinafter, under paragraph 228 (a), Tariff Act of 1930, as optical measuring instruments.

Appellant's protests alternatively claimed the measuring devices to be dutiable under the following paragraphs of said act: 372, as machines, at 27½ per centum ad valorem; 360, as scientific instruments, at 40 per centum ad valorem; 353, as electrical articles, at 35 per centum ad valorem; or 228 (b), as optical instruments, at 45 per centum ad valorem. In this court, appellant relies solely upon the claim for dutiability under said machine paragraph 372.

The sole question necessary for us to consider is whether or not the devices are provided for in paragraph 228(a) as optical measuring instruments, since it is, in effect, conceded that the provisions of paragraph 228(a) are more specific than those of the said machine paragraph.

Paragraph 228(a) reads:

PAR. 228(a). Spectrographs, spectrometers, spectroscopes, refractometers, saccharimeters, colorimeters, prism-binoculars, cathetometers, interferometers, haemacytometers, polarimeters, polariscopes, photometers, ophthalmoscopes, slit lamps, corneal microscopes, *optical measuring or optical testing instruments, testing or recording instruments for ophthalmological purposes*, frames and mountings therefor, and parts of any of the foregoing; all the foregoing, finished or unfinished, 60 per centum ad valorem. (Italics ours.)

The instruments involved were not before the trial court nor were they here. They had gone into commerce before the trial and are large and heavy, the largest weighing nearly 400 pounds. Photographic exhibits of the same, however, were introduced in evidence and are numbered 1, 2, 3, 4 and 5. The merchandise represented by Exhibits 1, 2 and 3 is called *spectrographic comparators*, while the device represented by Exhibits 4 and 5, which are front and side views of the same instrument, is called a *universal measuring machine*. All the devices are used for substantially the same kind of work. The device represented by Exhibits 4 and 5 is more elaborate than are the others, is much larger, and has a greater variety of uses. It may be used for all the purposes for which the devices represented by Exhibits 1, 2 and 3 may be used and for making some measurements which cannot be made with the latter.

Broadly speaking, all the devices at bar are designed to be and are used for the purpose of very accurate measurements and measurement comparisons, and especially are used for such close and accurate measurements as can not be made by hand and with the naked eye. All the devices comprise framework, plates, holders, and adjusting machinery for moving the objects to be measured past a scale of line measurements, and under a microscope or microscopes which are integral and essential features of the devices. According to the

testimony of the importer, Mr. Ferner, they are used in the following manner:

The WITNESS. One places a plate on the carriage, photographic plate, and rotating the hand wheel until the point of the plate on which one wishes to make the measurement, until it is under the lens of the microscope, and then reads the reading of the drum "H" at the left end of the machine as well as a scale shown on the front of the machine, for which there is an index mark. This locates the position of the point measured. Then to measure the distance from that to another point, you rotate on the hand wheel, and the difference between the two readings gives the length or distance between two points.

It is stated in the record that the device represented by Exhibits 4 and 5 has as many as 75 known uses, all of which relate to measurements or comparisons of measurements and that it is used in such places as the laboratories of Columbia University, the Bell Telephone Co., and the Western Electric Co.; that with such a device, spectrographic plates and astronomical photographs are measured and that it is used to determine the co-ordinates of points on photographs. It is also claimed that it may be used in measuring and comparing finger prints in crime detection cases and to measure the stretch of wires under load, and also to measure oscillograph filaments. One of the very important uses is for measuring machine parts, tools, dies, etc., which require extermely close measurements, the device measurements to be made of one ten-thousandth of an inch. One witness testified that—

the accuracy of the scales on this machine [the universal] is guaranteed to be one ten-thousandth of an inch.

It is definitely proven that the imported devices are not and could not be used for ophthalmological purposes. The record does not show that the instruments are used or are designed to be used in pure science. As a part of the device represented by Exhibits 1, 2, and 3, there is but one microscope. According to the witness Ferner, the microscope shown in Exhibit 3 represented about one-tenth of the value of the device. There are three microscopes on the device represented by Exhibits 4 and 5, and the importer testified that "the value of the microscope is about one-eighth of the whole machine". The comparators measure only in one direction while the universal measuring machine measures in two directions. In the latter instrument, one of the microscopes is called a micrometric microscope and measures the "displacements of the table", another is styled a micrometric microscope and measures the "displacements of the transversal carriage", and a third is termed a "locating microscope." Numerous accessories and tools may be attached to and used with the universal measuring device. It is shown that the comparators have no electric light in connection therewith, while the universal measuring machine contains a small electric light.

By the use of a reflection prism, the light is projected on the objects to be observed. The instruments contain glass panes associated with the table or part which holds the article to be measured, and the light may be reflected from below onto the article to be measured.

Some of the witnesses state that by the use of electrical contact apparatus, which might be used in connection with the imported articles, the microscopes could be dispensed with, but that these particular machines are not provided with such electrical contact equipment and that they have not been, as far as the witnesses knew, so used.

It is clearly disclosed by the record that the close and accurate measurements for which the devices are intended cannot efficiently and properly function except by the use of the microscope, since the devices are used in making microscopic measurements upon a scale containing microscopic measuring lines.

Appellant contends that this court's decision in the case of *United States* v. *Arthur H. Thomas Co.*, 22 C.C.P.A. (Customs) 120, T.D. 47105, in which case this court held microphotometers not to be optical measuring instruments, is controlling of the decision here. Appellant argues that the trial court having found in *G. W. Sheldon & Co.* v. *United States*, T.D. 44665, 59 Treas. Dec. 478, that a spectrographic comparator similar, if not identical, to that represented by Exhibit 1 at bar, was not an "optical instrument" under paragraph 228, Tariff Act of 1922, it should have gone further in the instant case and held that if the instruments were not "optical instruments" they could not be "optical measuring * * * instruments" within the meaning of the term as used in paragraph 228(a), Tariff Act of 1930.

Appellant contends that if it be conceded that the microscope or microscopes upon the articles at bar are optical instruments and essential to the use of the devices, they only represent a small portion of their value, and that the classification of the machine as a whole should not be controlled by such a minor part.

In order to determine whether or not devices such as are at bar are provided for by the language used in paragraph 228 (a), it would seem to be necessary to analyze the various provisions and determine, if possible, what Congress was attempting to do when it employed the rather involved expressions found therein. It will be noticed first that spectrographs, spectroscopes, ophthalmoscopes, corneal microscopes and other instruments, both measuring and nonmeasuring, are specifically named in the first part of the paragraph. Then comes the provision "optical measuring or optical testing instruments", followed by the term "testing or recording instruments for ophthalmological purposes."

In the Tariff Act of 1922, there was no such provision as—

optical measuring or optical testing instruments, testing or recording instruments for ophthalmological purposes.

Paragraph 228 of that act, among other things called for "microscopes and other optical instruments." During the preparation of the legislation under consideration, there were extensive hearings before the committees of Congress where the representatives of persons interested in certain scientific instruments, optical instruments and other devices urged Congress to make changes involving transferring into paragraph 228 (a) certain articles which had been assessed with a lower rate of duty under other paragraphs in the Tariff Act of 1922. It seems obvious that Congress felt it necessary to distinguish between "optical instruments", "optical measuring or optical testing instruments", and "testing or recording instruments for ophthalmological purposes" for duty purposes, and it did so.

A subcommittee of the Committee on Finance of the United States Senate, holding hearings on H. R. 2667, which became the Tariff Act of 1930, was told (Hearings, Volume 2, page 570) on behalf of Carl Zeiss (Inc.), an interested importer of certain instruments, the following:

Optical measuring and testing instruments are another class of instruments on which the House bill wants to increase the duty to 60 per cent. The expression "optical testing instruments" is a very indefinite generalization. It may cover anything optical that is otherwise "not specially provided for" in paragraph 228 a and b * * *.

The witness then expressed a belief that Congress should not leave the interpretation of the term "testing instruments" to the "individual customhouse appraiser." This suggestion, for obvious reasons, is not a proper matter for our consideration in arriving at the meaning of the terms of the bill as it came from the House, but it is apparent that Congress did not follow the suggestion and left the initial determination of what a testing instrument was to the customs officials, without definitely defining such an article.

In a document entitled "Comparative Print of H. R. 2667 (Tariff Act of 1929) as Passed by the House and Tariff Act of 1922 with Notes", which was a committee print under date of June 11, 1929, immediately following paragraph 228(a) is found the following note:

NOTE.—Cathetometers have been transferred from Par. 360 (p. 96 of this print)—old rate 40 per centum ad valorem.

The other instruments mentioned by name in this subparagraph were dutiable under 1922 Act, Par. 228—old rate 45 per centum ad valorem.

The remaining instruments in this subparagraph have been transferred from Par. 360 (p. 96 of this print)—old rate 40 per centum ad valorem, 1922 Act, Par.

399, (Bill, Par. 398, p. 124 of this print)—old rate 40 per centum ad valorem, and from 1922 Act, Par. 1453 (Bill, Par. 1551, p. 274 of this print)—old rate 20 per centum ad valorem.

Regardless of the scope intended by the term "optical measuring * * * instruments" and without indicating a precise definition of that term, and without suggesting everything which Congress might have contemplated would be provided for thereby, we feel certain that one of the instruments it intended to include therein was an instrument by which measurements were made, such as those involved in the consideration of the instant appeal, wherein optical devices and optical principles are involved and essential in making such measurements. That a microscope is an optical instrument is not disputed, and that an optical function is performed by the use of optical instruments when the devices at bar are used cannot be seriously questioned. Therefore, in view of the legislative history and the context of the paragraph under consideration and related paragraphs, we are of the opinion that the term "optical measuring * * * instruments" in paragraph 228(a) was intended to embrace instruments of the character of the ones represented by the exhibits at bar.

No anomalous result flowing from such a conclusion has been pointed out and none is apparent. Our conclusion herein reached, we think, is supported by the application to the paragraph of the doctrine of *noscitur a sociis*. There is no good reason to believe that Congress would want a lesser duty imposed upon an optical measuring instrument such as is at bar than upon the instruments specifically named in the provision.

The decision of the trial court, written by Judge Sullivan, shows a very careful consideration of the whole subject matter. In it are reviewed and discussed various authorities, and the same conclusion is arrived at as in *Eastman Kodak Co.* v. *United States*, T. D. 46688, 64 Treas. Dec. 398, where a photomeasuring micrometer was involved and where the decision was written by the same judge.

The holding in the case of *United States* v. *Arthur H. Thomas Co.*, *supra*, that a microphotometer was not an optical measuring instrument does not require the approval of the contentions of the appellant herein. The microphotometer under consideration in that case was wholly different in character and use from the measuring instruments at bar. In that case the microphotometer was designed and used to record on photographic films all the lines and the finest details which had previously been recorded on a spectrogram. The recording was done by the action of heat rays upon a thermocouple. The instrument was not before this court, but the record showed that it differed

from a photometer "inasmuch as a photometer is an instrument for comparing the intensities of two light sources, by some physical means", and that the microphotometer then under consideration "performs its function by the utilization of heat rays." We there quoted from the case of *United States* v. *Bliss & Co.*, 6 Ct. Cust. Appls. 433, T. D. 35980, where it was said:

\* \* \* the term "optical" relates to the phenomena of both light and vision. They are inseparable, because light itself is "the sensation of which one becomes conscious through the optic nerve."

The instruments at bar differ from the microphotometer in the *Thomas* case in their uses and principle of operation. Here the measurements can be ascertained only through the use of an optical instrument which directly aids the human eye. It is true that with the microphotometer in the *Thomas* case, after the lines had been recorded by a photographic operation, they then could be more easily seen, but the machine there no more aided the eye in seeing than does any machine which enlarges pictures. The instruments at bar can be operated only in connection with the use of an optical instrument which, when being used, aids the human eye.

For the reasons heretofore assigned, we hold that the instruments at bar were properly classified as optical measuring instruments. The judgment of the United States Customs Court is *affirmed*.